In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00076-CV


______________________________





IN THE INTEREST OF J.J.B., A CHILD





 


On Appeal from the 291st Judicial District Court


Dallas County, Texas


Trial Court No. 07-17536-U




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Darryl Mosley, appellant, filed his notice of appeal June 10, 2008. (1)

 Mosley has not filed a docketing statement with this Court, see Tex. R. App. P. 32, nor has
he paid a filing fee or made any claim of indigency. There is nothing in the record to indicate
Mosley has made efforts to have either the clerk's record or reporter's record filed with this Court,
and he has not filed a brief. On August 25, 2008, we contacted Mosley by letter, giving him an
opportunity to cure the various defects, and warning him that if we did not receive an adequate
response within ten days, this appeal would be subject to dismissal for want of prosecution. See
Tex. R. App. P. 42.3(b), (c). 

 We have received no communication from Mosley. Pursuant to Rule 42.3(b) of the Texas
Rules of Appellate Procedure, we dismiss this appeal for want of prosecution. See Tex. R. App. P.
42.3(b). 



 Bailey C. Moseley

 Justice


Date Submitted: September 18, 2008

Date Decided: September 19, 2008

1. This appeal was transferred to this Court pursuant to the Texas Supreme Court's docket
equalization program.


 Name="toc 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00009-CR

                                                ______________________________

 

 

                                       LISA GAIL
HARRIS, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25781

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Lisa Gail
Harris was convicted by a jury for possession of a controlled substance,
methamphetamine, and was sentenced to ten years in the Texas Department of
Criminal JusticeInstitutional Division.[1]  Harris appeals, claiming the evidence is
legally and factually insufficient to support the conviction.  We affirm the judgment.  

I.          FACTS

 

            On the evening of March 8, 2009,
Hunt County Sheriffs Deputy David Wilson initiated a traffic stop of a brown
Chevrolet van driven by Christopher Johnson. 
Harris was the sole passenger in the van.  Because Wilson believed Johnson exhibited
signs of having ingested methamphetamine, he asked Johnson for consent to
search the vehicle.  Johnson consented,
but indicated that the van belonged to his wifereferring to Harris.  After having advised Johnson to stand in
front of the patrol car, Wilson approached the passenger side of the
vehicle.  Because it was a dark evening
and Wilson was not carrying a flashlight, Harris did not see Wilson approach
her side of the van.  As Wilson
approached Harris window, he observed Harris bent over with her arm underneath
the passenger seat.  It appeared to
Wilson that Harris was either hiding something or reaching for something.  Wilson asked Harris to exit the vehicle and
sought consent to search.  Harris
indicated that she did not care if Wilson searched the vehicle.  

            Upon
searching the vehicle, Wilson discovered a clear container underneath the
passenger seat, containing a white, crystal substance, later identified as 3.6
grams of methamphetamine.  Wilson also
discovered a glass pipe, commonly used to smoke methamphetamine, inside the
van.[2]  Both Johnson and Harris denied ownership of
the methamphetamine and the pipe; Harris explained that other people borrowed
her van from time to time.  Both Johnson
and Harris were arrested for possession of a controlled substance.  Because Harris advised Wilson that the
container holding the methamphetamine would have her fingerprints on it, Wilson
did not request a fingerprint analysis of the container.  
II.        ANALYSIS

            We are
directed to subject challenges to the legal or factual sufficiency of the
evidence to the hypothetically correct jury charge analysis.  Grotti v. State, 273 S.W.3d 273, 280 (Tex.
Crim. App. 2008).  In order to prove its
case under Section 481.115 of the Texas Health and Safety Code, the State was required
to prove that (1) Harris exercised actual care, control, and management over
the contraband; and (2) Harris knew the substance in her possession was contraband.
 Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Murphy v. State, 200 S.W.3d 753, 761 (Tex. App.Texarkana 2006), affd, 239 S.W.3d 791 (Tex. Crim. App.
2007); see Tex. Health & Safety Code Ann. § 481.115(a).  Possession is defined as actual care,
custody, control, or management.  Tex. Penal Code Ann. § 1.07(a)(39)
(Vernon Supp. 2009).  

            Where,
as here, an accused is not in exclusive possession of the place where
contraband is found, additional independent facts and circumstances must be
developed which link the defendant to the contraband in order to raise a
reasonable inference of the defendants knowledge and control of the
contraband.  Poindexter, 153 S.W.3d at 406.  This rule is designed to protect an innocent
bystander from conviction merely because of fortuitous proximity to someone
elses drugs.  Evans v. State, 202 S.W.3d 158, 16162 (Tex. Crim. App. 2006).  Mere presence in the vicinity of a controlled
substance is insufficient to show possession. 
But proximity, when combined with other direct or circumstantial
evidence may be sufficient to establish beyond a reasonable doubt a persons
possession of a controlled substance.[3]  See id.
(direct or circumstantial evidence may be sufficient to establish possession
beyond a reasonable doubt).  The evidence
linking the accused to the contraband must establish, to the requisite level
of confidence, that the accuseds connection with the drug was more than just
fortuitous.  Poindexter, 153 S.W.3d at 40506.         The number of links is not dispositive;
rather, we look to the logical force of all of the evidence, direct and
circumstantial.  Evans, 202 S.W.3d at 162.  

            The following is a nonexclusive
list of facts that have been found to be sufficient, either singly or in
combination, to establish a persons possession of contraband:  (1) the defendants presence when a search is
conducted; (2) whether the contraband was in plain view; (3) whether the
contraband was in close proximity to, or accessible by, the defendant; (4)
whether the place where the contraband was found was enclosed; (5) whether the
defendant was under the influence of narcotics when arrested; (6) whether the
defendant possessed other contraband or narcotics when arrested; (7) whether
the defendant made incriminating statements when arrested; (8) whether the
defendant attempted to flee; (9) whether the defendant made furtive gestures;
(10) whether there was an odor of contraband present at the scene; (11)
whether other contraband or drug paraphernalia were present; (12) whether the
defendant owned or had a right to possess the place where the contraband was
found; (13) whether the defendant was found with a large amount of cash; (14)
whether the defendant possessed weapons; and (15) whether conduct of the
defendant indicated a consciousness of guilt. 
Evans, 202 S.W.3d at 162 n.12;
Hargrove v. State, 211 S.W.3d 379,
38586 (Tex. App.San Antonio 2006, pet. refd).

            Harris contends
the evidence is legally and factually insufficient because it does not link her
to the methamphetamine discovered in the van. 
In conducting a legal
sufficiency review, we consider the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009).  We must give
deference to the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson
v. Virginia, 443 U.S. 307, 31819 (1979)).  We are not required to determine whether we
believe that the evidence at trial established guilt beyond a reasonable doubt;
rather, when faced with conflicting evidence, we must presume that the trier of
fact resolved any such conflict in favor of the prosecution, and we must defer
to that resolution.  State v. Turro,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
In conducting a factual sufficiency review, we consider the evidence in
a neutral light.  Watson v. State,
204 S.W.3d 404, 41415 (Tex. Crim. App. 2006). 

            We may find evidence factually
insufficient in two ways:  (1) the
evidence supporting the conviction is too weak to support the fact-finders
verdict, or (2) considering conflicting evidence, the fact-finders verdict is
against the great weight and preponderance of the evidence. Laster, 275
S.W.3d at 518.  In so doing, we may find
the evidence insufficient when necessary to prevent manifest injustice.  Id.  
Although we give less deference to the verdict in a factual sufficiency
review, we will not override the verdict simply because we disagree with
it.  Id.  Both legal and factual sufficiency are measured
by the elements of the offense as defined by a hypothetically correct jury
charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti, 273 S.W.3d at
280.

            While Harris was not in exclusive
possession of the vehicle where the methamphetamine was found, there was
evidence of several additional facts and circumstances that demonstrate her
knowledge and control of this item of contraband.  First, Harris readily acknowledged that she
was the owner of the vehicle where the contraband was found.  Harris was present in the vehicle when the
search was conducted, where the methamphetamine was hidden underneath her
passenger seat in a Tupperware container. 
The contraband was easily accessible to Harrisjust within arms reach
under her seat.   Further, when Wilson
approached the passenger side of the van, he saw Harris bent forward with one
of her arms underneath the passenger seat, causing Wilson to suspect that Harris
may have been attempting to conceal something.  This could be described as a furtive gesture
on Harris part.[4]  In addition, a glass pipe used for smoking
methamphetamine was discovered in the van. 
Finally, Wilson testified that Harris advised, either en route to the
jail or while inside the jail, that the container containing the
methamphetamine should have her fingerprints on it because the Tupperware
matches her Tupperware from the house. 
The plain implication of this statement is that Harris owned the Tupperware
containing the methamphetamine.  This
statement is incriminating, and when taken in conjunction with the fact that
Harris appeared to conceal the container underneath the passenger seat as
Wilson approached the van, that the container was within her easy reach, and
that Harris owned the van where the methamphetamine was concealed, we find a
number of links tying Harris to the methamphetamine.  The number of factors or links present is not
as important as the logical force those factors have in establishing the
elements of the offense.  Hargrove,
211 S.W.3d at 386.  Here, we find
particularly compelling the fact that the methamphetamine was located in the
precise spot where Harris appeared to conceal something as Wilson approached
the van.  

            Viewing this evidence in the light
most favorable to the prosecution, a rational trier of fact could have found
beyond a reasonable doubt that Harris possessed the methamphetamine.  Moreover, we cannot say that the evidence supporting
the conviction is too weak to support the fact-finders verdict.  The only conflicting evidence is Harris
denial of ownership or knowledge of the drugs. 
We do not find the fact-finders verdict to be against the great weight
and preponderance of the evidence.

            We affirm the judgment of the trial
court.

 

                                                                        

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          September
13, 2010

Date Decided:             September
14, 2010

 

Do Not Publish           

 

 

 

 

 

            

 











[1][A]
person commits an offense if the person knowingly or intentionally possesses a
controlled substance listed in Penalty Group 1 . . . .  Tex.
Health & Safety Code Ann. § 481.115(a) (Vernon 2010).

 





[2]Wilson
could not recall the precise location of the glass pipe, or whether the pipe
contained any methamphetamine residue.  





[3]The
Texas Court of Criminal Appeals acknowledged, in a discussion of the
affirmative links test, that the term affirmative adds nothing to the plain
meaning of link.  When the term link is
utilized, it is clear that evidence of drug possession is judged by the same
standard as all other evidence.  Evans, 202 S.W.3d at 162.





[4]Furtive
gestures are generally defined as those which are surreptitious, underhanded,
or done by stealth.  Lopez v. State, 267 S.W.3d 85, 94 n.26 (Tex. App.Corpus Christi
2008, no pet.) (citing Websters
Collegiate Dictionary 509 (11th ed. 1993)).